HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLARK ELMORE,

              Plaintiff,

    v.

STEPHEN D. SINCLAIR,

              Defendant.

CASE NO. C08-53 RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon Petitioner's Motion for an Evidentiary Hearing [Dkt. #45]. Having considered the entirety of the records and file herein, and having heard the argument of the parties, the Court finds and rules as follows:

## I. FACTS AND PROCEDURAL HISTORY[1]

On April 17, 1995, Clark Elmore committed a heinous crime. Elmore raped and brutally murdered Kristy, the 14 year old daughter of his then girlfriend, Sue Ohnstad. After ordering Kristy to the back of his van and forcibly removing her clothing, Elmore raped Kristy as she continued begging him not to. He then took the belt from her pants and strangled her. Not convinced that Kristy was dead, he drove a needle-like object through her left ear five and a half

---

[1] This recitation is not intended to be comprehensive.

ORDER- 1

1  inches into her brain until it touched the skull on the other side.  Still not certain she was dead,

2  Elmore placed a garbage bag over Kristy's head and struck her several times with a

3  sledgehammer.  Kristy's partially nude body was found four days later near the South end of

4  Lake Samish in Whatcom County.  She was laying face down on the ground covered by a tarp

5  with the plastic bag still over her head.

6        On the evening of April 23, 1995, Elmore turned himself into Bellingham Police.  He was

7  interviewed by Bellingham Police Detective Les Gitts and gave a taped confession.

8        Elmore appeared the next day before a Whatcom County Court Commissioner who found

9  probable cause to detain him and charge him with murder in the first degree.  Jon Komorowski

10  of the Whatcom County Public Defenders' Office was thereafter appointed to represent Elmore.

11  He was subsequently charged with aggravated murder in the first degree and two counts of rape

12  in the second degree.  The state filed notice of their intent to seek the death penalty.  On June 29

13  and July 6, 1995, respectively, Elmore entered guilty pleas to aggravated murder in the first

14  degree and to one count of rape in the second degree.

15        On February 20, 1996, jury selection began.  Over approximately four and a half days

16  between March 6 and March 12, 1996, the state conducted a special sentencing proceeding to

17  determine whether Elmore would be sentenced to death or to life in prison without the possibility

18  of parole.  The defense's case-in-chief consisted of the testimony of the Court Commissioner

19  who handled Elmore's first appearance, the Superior Court Judge who handled the arraignment,

20  the Superior Court Judge who presided over a motion hearing and who took Elmore's guilty

21  plea, the defense investigator, and a law school professor.  The judges generally testified to

22  Elmore's subdued demeanor during their interactions with him, and to his attempt to plead guilty

23  at his initial appearance.  The defense investigator presented Elmore's personal history, and the

24

1   professor opined that none of Elmore's previous crimes were "strikes" under Washington's

2   "3 strikes" sentencing provision.  Elmore did not testify nor allocute.  The defense of Elmore's

3   life covers just seventy-seven pages of transcript and took less than one hour.  After deliberating

4   less than four hours, the jury returned a sentence of death on March 12, 1996.

5          Elmore's sentence of death was affirmed on direct appeal to the Washington State

6   Supreme Court on October 7, 1999.  The United States Supreme Court denied certiorari on

7   October 2, 2000.  After obtaining a stay of execution shortly thereafter, Elmore filed his Personal

8   Restraint Petition (PRP) on June 29, 2001.  His current counsel was appointed to represent

9   Elmore in his PRP, and moved the Washington State Supreme Court for a reference hearing.

10  The Supreme Court granted the request for a reference hearing, but limited the issue to be

11  addressed to whether counsel's failure to consult and call mental health experts in the penalty

12  phase was deficient. Petitioner sought to expand the hearing to include all of the allegations of

13  ineffective assistance of counsel and disputed factual issues regarding juror misconduct.  This

14  request was denied.

15         On June 7-10, 2004, Superior Court Judge Michael E. Rickert conducted the hearing.

16  Judge Rickert issued Findings of Fact on September 10, 2004.  On November 21, 2007 the

17  Supreme Court denied Elmore's PRP.  Elmore thereafter filed a Petition for a Writ of Habeas

18  Corpus in this Court.

19         Elmore's First Amended Petition for Writ of Habeas Corpus contained 15 claims for

20  relief.  By way of the motion now before the Court, he seeks an evidentiary hearing on six of

21  those claims "to present live witnesses to testify to the facts they previously swore to in written

22  declarations." [Petitioner's Supplemental Memorandum Regarding Application of *Pinholster*,

23  Dkt.62, p. 1].  The claims are:

24

1    Claim 3: Guilty plea ineffective assistance of counsel

2    Claim 4: Juror misconduct

3    Claims 7 and 8: Penalty phase ineffective assistance of counsel

4    Claim 10: Redaction of audiotape

5    Claim 13: Cumulative ineffective assistance of counsel

6  [Dkt. 62, p. 11].  Elmore may also still be seeking an evidentiary hearing on Claims 5 and 6

7  (concerning the shackling of the defendant) and on Claim 9 (regarding trial counsel's failure to

8  object to the prosecutor's dangerousness argument).  [Motion for Evidentiary Hearing, Dkt. 45,

9  pp. 39-45].

## II. DISCUSSION

**A.  Standard for an Evidentiary Hearing.**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat.
1214, a petitioner is not entitled to federal habeas relief unless he can demonstrate that the state
court's adjudication of a claim "resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined by the Supreme
Court of the United States," 28 U.S.C. § 2254(d)(1), or the state court's decision "was based on
an unreasonable determination of the facts in light of the evidence presented in the State court
proceeding." § 2254(d)(2).  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  The state court's
factual findings "shall be presumed to be correct" unless the petitioner rebuts this presumption
with "clear and convincing evidence." § 2254(e)(1)[2]; *see also id.*, at 473-474.

---

[2]Title 28, United States Code Section 2254(d) and (e) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the
judgment of a State court shall not be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of the claim - -

1    The *Landrigan* Court provided the following directives to district courts:

2        In deciding whether to grant an evidentiary hearing, a federal
3        court must consider whether such a hearing could enable an
         applicant to prove the petition's factual allegations, which, if true,
         would entitle the applicant to federal habeas relief.  Because the
4        deferential standards prescribed by § 2254 control whether to
         grant habeas relief, a federal court must take into account those
         standards in deciding whether an evidentiary hearing is
5        appropriate.

6        It follows that if the record refutes the applicant's factual
         allegations or otherwise precludes habeas relief, a district court is
         not required to hold an evidentiary hearing.

*Id.* (internal citations and footnote omitted).

To that end, the Supreme Court has recently held that "review under § 2254(d)(1) is

limited to the record that was before the state court that adjudicated the claim on the merits."

*Cullen v. Pinholster*, 563 U.S. _____, 131 S. Ct. 1388, 1398 (2011).  By its terms, review under

---

(1) resulted in a decision that was contrary to, or involved an unreasonable application of,
clearly established   Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light
of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court, a determination of a factual issue made by a
State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the
presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings,
the court shall not hold an evidentiary hearing on the claim unless the applicant shows that - -

(A) the claim relies on - -

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the
Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the
exercise of due diligence;  and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing
evidence that but for constitutional error, no reasonable factfinder would have found the
applicant guilty of the underlying offense.

§ 2254(d)(2) is also limited to the record before the state court.  *See id*., at 1400, n. 7; *see also id*., at 1415 (Sotomayor, J., dissenting).  To "determin[e] whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Harrington v. Richter*, 562 U.S. _____, 131 S. Ct. 770, 784 (2011).   "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any state-law procedural principles to the contrary."  *Id*.

Therefore, this Court cannot hold an evidentiary hearing and use facts found at that hearing to rule that the state court's decision violated either § 2254(d)(1) or (d)(2).  As explained by Justice Breyer, a federal habeas court may hold an evidentiary hearing under § 2254(e) if it first "finds that the state-court decision fails (d)'s test (or if (d) does not apply.")  *Pinholster*, 131 S. Ct. at 1412 (Breyer, J., concurring in part and dissenting in part).

To fail § 2254(d)'s test, the habeas court must conclude that the state-court decision was not merely incorrect or erroneous, it must also be unreasonable.  *Terry Williams v. Taylor*, 529 U.S. 362, 411 (2000) (O'Connor, J., concurring); *Landrigan*, 550 U.S. at 473.  Section 2254(d) does not apply if a claim was not "adjudicated on the merits in state court proceedings." *Pinholster,* 131 S. Ct. at 1401 (referencing *Michael Williams v. Taylor*, 529 U.S. 420, 427-429 (2000)).

## B. An Evidentiary Hearing in This Case Is Foreclosed By Supreme Court Case Law.

Elmore argues that he was "not provided a full and fair hearing in state court on claims which are clearly colorable" and argues that the "extraordinarily narrow" hearing that he did have "fail[ed] to resolve any of the disputed facts."  [Motion, Dkt. #45, pp. 1-2.]  He seeks the hearing not to develop new facts, but to "fully prove what he alleged in state court" and "so that

ORDER- 6

1    disputed facts can for the first time be properly resolved – with this Court evaluating live

2    testimony, rather than simply relying on a paper record."  [*Id.*, *see also* Pet. *Pinholster* Brief,

3    Dkt. #62, p. 1, "he seeks an evidentiary hearing to present live witnesses to testify to the facts

4    they previously swore to in written declarations."]  Elmore argues that he diligently attempted to

5    develop his claims in state court, but the state court's failure to allow an evidentiary hearing on

6    all the claims he requested denied him the opportunity to develop the factual basis of his claims.

7    He relies on *Michael Williams v. Taylor* for this proposition.  [Pet. *Pinholster* Brief, Dkt. #62,

8    pp. 10-11.]

9          In *Michael Williams* the petitioner sought an evidentiary hearing in federal court on three

10   claims he had not presented to the state court.  The state argued that an evidentiary hearing was

11   precluded by § 2254(e)(2) because he "failed to develop the factual basis of the claim" in the

12   state court.  The Supreme Court held that "a failure to develop the factual basis of a claim is not

13   established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or

14   the prisoner's counsel."  *Michael Williams*, 529 U.S. at 432.  The Court found that the petitioner

15   was entitled to an evidentiary hearing on two of his claims, in part because he sought at the state

16   level funds for an investigator to investigate the empanelling of the jury and because the fault, if

17   anyone's, was with the juror and prosecutor who remained silent during questioning.  *Id.*, at 442-

18   43.

19         Unlike *Michael Williams*, Elmore is not asserting claims that were not before the

20   Washington Supreme Court.  All the claims he presents here were asserted in his PRP.  He

21   presented his own and trial counsel's declarations, declarations from legal and medical experts,

22   and from family and friends.  He submitted the deposition of Juror 12.  The state court also

23   conducted a four-day reference hearing on his claim that trial counsel failed to consult and call

24

1  mental health experts in the penalty phase.  He argues now that because the state court did not

2  conduct an evidentiary hearing on all of his claims, the claims where no evidentiary hearing was

3  held were not adjudicated on the merits.

4      It is clear from *Harrington v. Richter, supra*, and *Lambert v. Blodgett*, 393 F.3d 943, 969

5  (9th Cir. 2004) that an evidentiary hearing is not required for a claim to be "adjudicated on the

6  merits."  In *Richter*, there was no evidentiary hearing held at the state level and the California

7  Supreme Court denied the writ in a one sentence summary order.  *Richter*, 131 S. Ct. at 783.  The

8  Supreme Court held "determining whether a state court's decision resulted from an unreasonable

9  legal or factual conclusion does not require that there be an opinion from the state court

10  explaining the state court's reasoning."  *Id.*, at 784.  It explained that where there is no

11  explanation from the state court, "the habeas petitioner's burden still must be met by showing

12  that there was no reasonable basis for the state court to deny relief."  *Id.*  Furthermore, the Ninth

13  Circuit has specifically held that an evidentiary hearing is not required for a claim to be

14  "adjudicated on the merits."  *Lambert*, 393 F.3d at 969 ("We decline to accept Lambert's

15  proposal to inject an 'evidentiary hearing' requirement as a pre-requisite to AEDPA deference.")

16      The Washington Supreme Court clearly "adjudicated on the merits" all of petitioner's

17  PRP claims.  The record before that court was voluminous and was sufficiently complete for it to

18  decide the issues.  *Id.*, at 970.  Elmore's disagreement with the decisions reached by the

19  Washington Supreme Court is not a basis for this Court to conduct an evidentiary hearing given

20  AEDPA's deference and "Congress['] wish[ ] to curb delays, to prevent 'retrials' on federal

21  habeas, and to give effect to state convictions to the extent possible under the law."  *Terry*

22  *Williams v. Taylor*, 529 U.S. at 386 (opinion of Stevens, J.).

23

24

1

### III.  CONCLUSION

2      The Court's task in deciding whether to hold an evidentiary is to "consider whether such

3  a hearing could enable an applicant to prove the petitioner's factual allegations, which, if true,

4  would entitle the applicant to relief."  *Landrigan*, 550 U.S. at 474.  Here, because Elmore merely

5  wants the Court to listen to live testimony about what is already in the record, because *Pinholster*

6  prohibits the Court from considering new evidence to decide if the state court's legal or factual

7  decisions were unreasonable, and because of the deference due under AEDPA and *Strickland v.*

8  *Washington*, this Court declines to hold an evidentiary hearing on Elmore's petition.  The Motion

9  for an Evidentiary Hearing [Dkt. #45] is **DENIED.**

10      The parties shall confer and establish a joint recommendation scheduling the further

11  litigation of this matter.  Such recommendation shall be filed with the Court within 28 days of

12  entry of this Order.  If the parties cannot agree, then individual positions shall be filed.

13  **IT IS SO ORDERED.**

14      The Clerk shall send uncertified copies of this order to all counsel of record, and to any

15  party appearing pro se.

16      Dated this 2nd day of November, 2011.

17

18  _____

RONALD B. LEIGHTON

19  UNITED STATES DISTRICT JUDGE

20

21

22

23

24